UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIEL GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-03335 |
| | ) | |
| REYNALDO GUEVARA, BERSCOTT | ) | Judge Charles P. Kocoras |
| RUIZ, ALAN PERGANDE, EDWARD | ) | |
| MINGEY, ROBERT BIEBEL, UNKNOWN | ) | |
| EMPLOYEES OF THE CITY OF | ) | |
| CHICAGO, and the CITY OF CHICAGO, | ) | |
| Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant City of Chicago's ("the City") Motion to Bifurcate Plaintiff Ariel Gomez's ("Gomez") *Monell* claims for purposes of discovery and trial pursuant to Federal Rule of Civil Procedure 42(b). For the following reasons, the Court denies the City's motion.

## STATEMENT

The following facts are taken from the record and are largely undisputed unless otherwise noted.

On June 13, 1997, the Chicago Bulls secured their fifth NBA championship, and celebrations ensued throughout the city. Among those celebrating was Plaintiff Ariel Gomez ("Gomez"), who was seventeen-years-old at the time. Gomez and four of his

teenage friends were driving around in his mother's Nissan Pathfinder when they arrived at the intersection of Cicero and Diversey.

While Gomez and friends were stopped at the intersection, several passersby flashed gang signs at them and threw bricks at the car, breaking the windows and hitting one of the teens in the head. The teens quickly drove away from the intersection but were subsequently blocked by a crowd. To disperse the crowd, Gomez leaned out the front passenger window and fired a single shot from his .45 caliber Ruger handgun into the sky.

Gomez's single shot was followed by several more gunshots from someone in a nearby parking lot. At least two of the shots from the parking lot struck and killed Concepcion Diaz as he waited for a bus. Police arrived at the scene within minutes of the shooting and obtained the Nissan Pathfinder's license plate number from a witness, linking Gomez to the crime. What followed over the next year was an investigation conducted by Defendants Reynaldo Guevara ("Guevara"), Berscott Ruiz ("Ruiz"), and Alan Pegrande ("Pegrande") that Gomez alleges involved physical and psychological abuse, fabricated statements, and evidence suppression. Gomez claims these tactics lead to his wrongful conviction for the murder of Concepcion Diaz, for which he served almost two decades in prison before his exoneration on February 14, 2018.

Gomez now brings claims against Officers Guevara, Ruiz, and Pegrande, Supervising Officers Edward Mingey ("Mingey") and Robert Biebel ("Biebel") (collectively, "Defendant Officers"), and the City (collectively, "Defendants") for

violations of his civil rights under 42 U.S.C. § 1983, including a *Monell* claim against the City, 436 U.S. 658 (1978). In the instant motion, the City moved to bifurcate the *Monell* claims pursuant to Federal Rule of Civil Procedure 42(b), requesting that the Court stay discovery and trial on those claims.

Federal Rule of Civil Procedure 42(b) provides that, "[f]or the convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims…." This rule "is read in light of the overarching policy principle behind the Federal Rules, which seeks the just, speedy, and inexpensive resolution of every trial. Accordingly, because bifurcation risks additional delay, it has remained the exception and not the rule." *A.L. Hansen Mfg. Co. v. Bauer Products, Inc.*, 2004 WL 1125911, at *2 (N.D. Ill. 2004); *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) ("The piecemeal trial of separate issues in a single lawsuit is not to be the usual course."); *See also Awalt v. Marketti*, 2012 WL 1161500, at *10 n.2 (N.D. Ill. 2012) ("The Court has looked at every decision in this District involving bifurcation of *Monell* claims…since the Seventh Circuit decided *Thomas v. Cook County Sheriff's Dep't*. It is clear that the weight of authority holds that bifurcation is now heavily disfavored.") (internal citations omitted). However, because this determination involves a balancing of equities, the ultimate decision is within the Court's discretion. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).

In deciding whether to grant a motion to bifurcate, the Court must consider "whether separate trials would avoid prejudice to a party or promote judicial economy." *Id.* If one of those two circumstances exists, then the Court needs to ensure that the decision to bifurcate would "not unfairly prejudice the non-moving party." *Id.* Only once both criteria are found can the Court grant the motion to bifurcate.

### I. Avoidance of Prejudice

The Court must first consider whether bifurcation would avoid prejudice to the Defendants. The City argues that bifurcation would prevent prejudice in two ways. First, it would avert the possibility of *Monell* evidence being imputed to the Defendant Officers for purposes of assessing their individual liability. Second, bifurcation would avoid the City being in a similar position as it was in *Rivera*, 1:12-cv-4428, where they had to divide time among defense attorneys, leading to a rushed presentation of their case and ultimately a verdict against them.

The Court finds neither of these arguments persuasive. Regarding potential prejudice to the Defendant Officers, a limiting instruction to the jury is the proper mechanism to address that concern. As this Court has previously stated, "[t]hough the Court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others…." *Medina v. City of Chi.*, 100 F.Supp.2d 893, 897 (N.D. Ill. 2000). Indeed, the Federal Rules of Evidence anticipate and provide for this exact scenario, asserting,

4

"[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105.

Furthermore, the Court does not consider the potential replication of the City's position in *Rivera* to be an argument in favor of bifurcation. While the outcome was not as the City had hoped, that does not speak to inherently prejudicial circumstances, but rather the merits of the plaintiff's case. Certainly, a past loss should not dictate the need to bifurcate similar claims brought in the future. Accordingly, the Court does not find that bifurcation would serve the interests of avoiding prejudice in this case.

**II. Judicial Economy**

The City next argues that bifurcation would serve the interests of judicial economy by avoiding unnecessary discovery and litigation. The City first claims that the *Monell* claim may not need to be adjudicated at all, as it is contingent on a finding of liability on behalf of the Defendant Officers. Accordingly, the City also asserts that discovery on the *Monell* claim at this juncture would add needless time and expense to the case. The Court addresses each argument in turn.

**A. Pendency of *Monell* Claim on Individual Officer Liability**

The City contends that "a municipality cannot be held liable pursuant to *Monell* unless Plaintiff establishes he suffered a constitutional violation." However, that is not a bright line rule. According to the Seventh Circuit, "a municipality can be held liable

5

under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cty. Sherrif's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). To determine whether the findings would be inconsistent, the Court must "look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Gomez asserts several theories of *Monell* liability against the City, including that the City facilitated policies that allowed for evidence suppression, abusive interrogations, and fabrication of statements. Although some of the theories asserted would require misconduct on behalf of the Defendant Officers, such as maintaining policies that fostered physical abuse, not all the asserted *Monell* theories would. For example, with respect to the evidence suppression allegations, the jury could presumably find that the Defendant Officers put the evidence in its proper place within the Chicago Police Department files, but that the City had no mechanism for guaranteeing that those files were turned over in the litigation process. This finding would not be contingent on the jury determining that the individual officers intentionally suppressed evidence. Moreover, courts in this district have recognized that under similar facts, the City may be liable for *Monell* claims without a finding that individual officers engaged in misconduct. *See Cage v. City of Chi.*, 2010 WL 3613981 (N.D. Ill. 2010) (finding that it would be consistent for a jury to hold the City liable for a policy of not providing exculpatory evidence to the defense despite the individual actors not intending to withhold said evidence); *See also Rivera v. City of Chi.*, 1:12-

6

cv-4428 (returning a jury verdict against the City on various *Monell* theories despite an individual detective not being found liable).

Additionally, the Court needs to consider the defenses set forth by the parties, including the asserted defense of qualified immunity. In cases where qualified immunity is available, the jury could find the City liable for *Monell* violations despite the individual officers being shielded from liability. *Medina v. City of Chi.*, 100 F.Supp.2d at 896 ("Thus when a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against he municipality if he can prove a constitutional deprivation caused by a municipal policy or custom. In this situation, bifurcation will not avoid a second trial…."); *Awalt*, 2012 WL 1161500, at *12 ("In addition, it is likely that some of the Defendants in this case will assert immunity from liability—qualified immunity, state-law immunity, etc. …This leaves open the possibility that no inconsistent verdict will arise…."); *Cage*, 2010 WL 3613981, at *2 ("Moreover, some of the individual defendants have asserted a defense of qualified immunity, and if Cage can establish it was the policy of the Chicago Police Department crime lab to withhold exculpatory evidence, a verdict could exist against the municipality but in favor of the individual defendants.").

Divergent findings between the Defendant Officers and the City are not necessarily inconsistent of one another. Therefore, Gomez's asserted *Monell* claim could still proceed independent of the Defendant Officers individual liability. Accordingly, bifurcation would not serve the interests of judicial economy on this

7

ground, as the claim could be adjudicated regardless of the outcome in the trial against the Defendant Officers.

### B. Increased Discovery and Litigation Costs

The City next asserts that the increased discovery burden of proceeding with the *Monell* claims is grounds for bifurcation. Even if the Court agreed that the *Monell* claim could not proceed until a jury found individual officer liability, the argument that bifurcation would decrease the discovery burden is mistaken in practicality. As our sister court reasoned in the analogous case *Sierra v. Guevara*:

> I do not believe that bifurcation of discovery or trial would materially facilitate the speedy and efficient resolution in this case. In fact, in my experience, bifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery.

1:18-cv-3029, Dkt. 88. This problem is exacerbated in cases such as this where there is a significant overlap in the witnesses, experts, and evidence that would be involved in each phase of litigation. This could create double work in the sense of, for example, needing to depose witnesses or solicit testimony first regarding Gomez's specific case and a second time regarding how the City's policies impacted that case work. *See Cadiz v. Kruger*, 2007 WL 4293976, at *4 (N.D. Ill. 2007) ("The vast majority of these…witnesses have been identified as relevant to both the *Monell* and the individual claims. For those witnesses who would speak to both claims, bifurcation would lead to the possibility of requiring them to sit for multiple depositions, which likely would increase the cost of the depositions to the parties and which surely would be less

convenient for the witnesses."). Although the *Monell*-related discovery will likely be a costly effort, that fact alone is insufficient to require bifurcation. *See Cadiz*, 2007 WL 4293976 at *3. Given the likelihood that bifurcation could increase litigation costs, the Court finds that bifurcation would not increase judicial economy.

### III. Prejudice to the Non-Moving Party

Although the Court would normally only reach this stage of the inquiry if it found that bifurcation would avoid prejudice to a party or increase judicial economy, the Court deems it wise to explain the prejudice Gomez would face if the *Monell* claims were bifurcated. The City moved to bifurcate the *Monell* claims in this case and stay all related discovery and trial until the resolution of the claims against the Defendant Officers. In effect, this motion serves to prevent an adjudication of the *Monell* claim's merits regardless of the outcome of the first trial. *Cadiz*, 2007 WL 4293976, at *1. As the Court held in *Cadiz*:

> The City argues that if plaintiff does not establish Section 1983 liability against the officers, then there can be no *Monell* claim…. The City further suggests that even if plaintiff does establish Section 1983 liability against the officers, trial of the *Monell* claim will be unnecessary (and thus should not proceed) because it can provide plaintiff with no additional compensatory damages.

*Id*. Essentially, the City is asserting the same arguments here to achieve a *de facto* dismissal of the *Monell* claim by way of bifurcation. This would undoubtedly prejudice Gomez in his efforts to hold the City accountable for his wrongful conviction. Echoing the holding in *Cadiz*, this Court does "not believe that the City should be allowed to

9

deprive a plaintiff of a merits determination of a *Monell* claim by the expedient of agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway." *Id*.

Gomez has a profound interest in pursuing his claims with an eye toward institutional reform. As the Supreme Court has avowed, "[Section 1983] is designed to provide compensation for injuries arising from the violation of legal duties, and thereby, of course, to deter future violations." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999). As this District has recognized, a judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city. *Medina*, 100 F.Supp.2d at 896. The City should not be allowed to strip Gomez of this opportunity, and as such, must face the music with respect to the merits of the *Monell* claims.

## **CONCLUSION**

For the aforementioned reasons, the Court denies the Defendants' motion to bifurcate. It is so ordered.

Dated: 04/08/2019

_____

Charles P. Kocoras
United States District Judge