IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **Ariel Gomez**, <br><br>        Plaintiff, <br><br> v. <br><br> **Reynaldo Guevara, Berscott Ruiz, Alan Pergande, Edward Mingey, Robert Biebel, Unknown Employees of the City of Chicago**, and **the City of Chicago**, <br><br>        Defendants. | No. 18 C 3335 <br><br> Hon. Charles P. Kocoras, District Judge |

**Plaintiff's Motion to Compel *Monell* Discovery**

Jon Loevy
Anand Swaminathan
Steve Art
Rachel Brady
Sean Starr
John Hazinski
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
hazinski@loevy.com

November 24, 2020

It is difficult to imagine a case with stronger grounds for *Monell* discovery. Plaintiff is one of at least twenty men wrongly convicted based on the investigative misconduct of notorious Chicago police detective Reynaldo Guevara. In response to questions about his misconduct in this case, Guevara has asserted his Fifth Amendment right not to incriminate himself. Plaintiff has alleged and intends to prove that his wrongful conviction and numerous others were the result of not only the misconduct of Guevara and his colleagues, but also the policies and customs of the City of Chicago. In order to meet his heavy burden of proof on these *Monell* claims, Plaintiff seeks the production of Area 5 homicide files for the years preceding his arrest and prosecution, which will show the existence of widespread practices of evidence suppression and fabrication. In addition, Plaintiff seeks Complaint Register (CR) files that will demonstrate the City's policies and practices regarding the supervision and discipline of its officers.

Despite the central relevance of these homicide and CR files, the City has unfortunately refused to comply with Plaintiff's *Monell* discovery requests. This refusal is impossible to square with the numerous other cases alleging that Detective Guevara and his colleagues at Area 5 framed innocent people, in which courts have routinely ordered the City to produce homicide and CR files exactly like those Plaintiff has requested in this case. *See Bouto v. Guevara*, No. 19 C 2441, 2020 WL 4437671 (N.D. Ill. Aug. 3, 2020)); Ex. A (Order on homicide & CR files in *Sierra v. Guevara*, No. 18 C 3029, dkt. 154 (N.D. Ill. Dec. 3, 2019)); *DeLeon-Reyes v. Guevara*, No. 18 C 1028, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019); Ex. B (Order on homicide files in *Rivera v. Guevara*, No. 12 C 4428, dkt. 196 (N.D.

Ill. May 27, 2015)).[1] And in two recent cases, the exact type of evidence that Plaintiff seeks here has resulted in federal jury verdicts that the City's policies and customs caused the violation of citizens' constitutional rights. *Rivera*, No. 12 C 4428 (N.D. Ill.); *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.). Just this month, the Seventh Circuit affirmed the jury's *Monell* verdict in *Fields*, holding that the district court's restrictive limitation on *Monell* discovery early in the case justified a new trial on the *Monell* claims, and concluding that *Monell* discovery identical to the type Plaintiff seeks here supported the jury's finding of municipal liability. *Fields v. City of Chicago*, 2020 WL 6817489, at *16–18 (7th Cir. Nov. 20, 2020).

Critically, the fact that courts have ordered the City to produce homicide and CR files in numerous prior cases means that virtually all the documents Plaintiff seeks here have *already been produced* and could be easily re-produced in this case at no additional cost to the City. Specifically, the City has been ordered to produce all Area 5 CR and homicide files for the years 1995 through 1998 in *Reyes*; 1991 through 1995 in *Sierra*; and 1989 through 1993 in *Bouto*. Put simply, the *Monell* discovery necessary to this case has already been ordered by district courts in other Guevara cases, and there is no reason for the City to refuse to make the same documents available in this litigation.

In light of this history, *Monell* discovery in this case is plainly relevant, proportionate, and unobjectionable. Plaintiff seeks an order in this case requiring the only following *Monell* discovery:

---

[1] In *Reyes*, the City has filed Rule 72 objections regarding the order to produce homicide files. These objections are fully briefed and remain pending before Judge Seeger, but the City has already produced the complete set of CR files from the years 1995 through 1998. Rule 72 objections to the production of homicide (but not CR) files are similarly pending in *Bouto*.

- the production of Area 5 CR files for the years 1991 through 1997, which have already been produced in *Sierra* and *Reyes*; and
- the production of Area 5 homicide files for the years 1991 through 1997, which have already been ordered produced in *Bouto*, *Sierra*, and *Reyes*.

Pursuant to this request, the City would have to produce only two additional years of homicide files, as the remaining document discovery is already complete. These documents are relevant, proportionate to the needs of the case, and vital to adequately adjudicate Plaintiff's *Monell* claims.

**Background**

Plaintiff Ariel Gomez alleges that he was wrongfully convicted for the 1997 murder of Concepcion Diaz. Compl., dkt. 1, ¶ 2. Although Gomez was innocent and no evidence connected him to the murder, Detective Guevara and his colleagues coerced Gomez's false confession through physical torture and psychological abuse. *Id.* ¶¶ 3–7. As part of their scheme to frame Gomez, Defendants created false reports and other police records to support their fabricated narrative. *Id.* ¶ 8. They also suppressed exculpatory and impeachment evidence that would have demonstrated Gomez's innocence. *Id.* ¶ 9. As a result of this misconduct, Gomez was convicted of first-degree murder and sentenced to 35 years in prison. *Id.* ¶ 121. He served more than twenty years before being exonerated in 2018. *Id.* ¶ 134.

In this lawsuit, Gomez alleges that his wrongful conviction and imprisonment resulted not only from deliberate misconduct by the Chicago Police Department officials but also from the City's policies. Specifically, Gomez alleges that the city maintained policies, practices, and customs that: (1) caused the routine suppression of evidence, including but not limited to the suppression of documents in clandestine street files; (2) resulted in the fabrication of evidence, including witness statements; (3) permitted physically and psychologically abusive

interrogations that resulted in false confessions and false statements; (4) allowed for the manipulation of identification procedures; and (5) left Chicago police officers without adequate training, supervision, or discipline. *Id.* ¶¶ 92–119; 177–189.

These *Monell* theories have been thoroughly tested in other cases in this District. In two recent cases, homicide files were used as the central evidence of the very City policies and customs at issue here, and in both cases juries found the City liable on the *Monell* claims and the City's post-trial motions were denied. *Rivera*, No. 12 C 4428 (N.D. Ill.), dkts. 678 & 782; *Fields*, No. 10 C 1168 (N.D. Ill.), dkts. 1175 & 1227. In both cases, courts in this District ordered the City to produce large volumes of homicide files over the City's strenuous objections. In both cases, the homicide files were used to show that the City's policies and customs related to investigative file-keeping and the production of homicide files to the criminal justice system caused the routine suppression of evidence, in violation of the plaintiffs' constitutional rights. The Seventh Circuit recently affirmed the judgment in *Fields*, emphasizing the importance of the *Monell* evidence adduced in the district court. *See Fields*, 2020 WL 6817489, at *16–17 (7th Cir. Nov. 20, 2020).

Moreover, numerous courts in this District have recognized that CR files—the City's only documentation of complaints against Chicago police officers and its response to those complaints—are relevant to showing notice to the City of police misconduct and to proving claims that the City failed to properly train, supervise, and discipline its employees. The production of CR files has been ordered most recently in *Bouto*, 2020 WL 4437671, as well as *Sierra* (Ex. A); *Reyes*, 2019 WL 4278043; *Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099 (N.D. Ill. Apr. 15, 2020); and *Hood v. City of Chicago*, 16 C 1970, dkt. 191 (N.D. Ill. Nov.

4

29, 2018) (Ex. C). These cases establish that Plaintiff's *Monell* theories have merit and that the requested homicide and CR files are probative of those theories.

The *Monell* discovery at issue overlaps with ongoing *Monell* discovery in other Guevara cases. Guevara has a long history of misconduct and, as of today, at least 20 men have had their convictions thrown out as a result of that misconduct. Compl., dkt. 1 ¶ 114.[2] Currently, a number of civil cases concerning Guevara's investigative misconduct and the City's policies and customs are currently pending, and *Monell* discovery is moving forward in at least five of those cases. *See Bouto*, 19 C 2441, dkt. 105; *Maysonet v. Guevara*, 18 C 2342, dkt. 138 (N.D. Ill.); *Reyes*, No. 18 C 1028, dkt. 174; *Rodriguez v. City of Chicago*, No. 18 C 7951, dkt. 68 (N.D. Ill.); *Sierra*, No. 18 C 3029, dkt. 84. Nearly all of the *Monell* theories at issue in these cases are identical, and they all concern investigations between 1990 and 1998.

Against this backdrop—and based on his lawyers' experience proving the *Monell* claims at issue—Gomez issued tailored requests for production to the City, seeking those files relevant to his specific *Monell* theories for the relevant time period. Ex. D (Plaintiff's Second Set of Requests for Production to the City) at 2–3. The City moved to bifurcate and stay the *Monell* claims, arguing that its liability depended on a finding that the individual Defendants had violated the constitution and that *Monell* discovery would be burdensome. Dkt. 53. The Court denied the City's motion, noting in its opinion that *Monell* litigation about the City's policies and practices was necessary to allow Plaintiff "to hold the City accountable for his wrongful conviction." Dkt. 65 at 9.

---

[2] Since Plaintiff's complaint was filed, two more men have been exonerated based on revelations of Guevara's misconduct, and their subsequent civil cases are ongoing. *See Iglesias v. Guevara*, 19 C 6508 (N.D. Ill); *Johnson v. Guevara*, No. 20 C 4156 (N.D. Ill.).

Gomez conferred with the City, further limiting his requests in an attempt to reach agreement on the appropriate scope of *Monell* discovery and avoid unnecessary motion practice. Ex. E (A. Swaminathan email re: *Monell* discovery, Sept. 2, 2020). Among other suggestions, Gomez offered to narrow his request for homicide and CR files if the City would stipulate that a sample of the files was representative of the City's policies and customs. *Id.* at 1–3. But after several months of unexplained delay, the City once again rejected all of Plaintiff's proposals for *Monell* discovery, and offered no counterproposal. Ex. F (E. Rosen email re: *Monell* discovery, Nov. 16, 2020). The City's refusal to meaningfully participate in these negotiations is inexplicable given that four different district courts have now held that similar *Monell* discovery is relevant and proportional to the needs of the case. Because Area 5 homicide and CR files are critically important to Plaintiff's *Monell* claims, Plaintiff has filed this motion to seek the Court's assistance in compelling their production.

**Argument**

The requested Area 5 homicide and CR files are vital to Plaintiff's *Monell* claims and should be produced in this case. As explained above, all of these documents have already been produced or ordered produced in other cases against Detective Guevara; making them available in this case is as simple as designating the appropriate Bates ranges.[3] There is therefore no colorable argument that these documents should not be re-produced in this litigation, as they are directly relevant to establish the City's policies and customs.

---

[3] Although the City has been ordered to produce all Area 5 homicide files for the years 1995 through 1998 in *Reyes*, its Rule 72 objections to that order remain pending. As a result, the City has not yet begun producing homicide files from two years (1996 and 1997) that Plaintiff is requesting.

**A.      The Scope of *Monell* Discovery Is Often Broad Given the Onerous Burden of Proof**

Before discussing why both homicide files and CR files are essential to Plaintiff's *Monell* claims in this case, it is important to place this discovery in context. Under *Monell*, a municipality cannot be held vicariously liable under section 1983. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). To hold the City liable, Plaintiff must show that its "official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (quoting *City of Canton v. Harris*, 489 U.S. 378, 379 (1989); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). This evidentiary burden is especially severe in a case like this one, where Plaintiff must rely in part on evidence of a widespread custom to establish municipal liability. *See Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference."); *see also Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 780 (7th Cir. 2014) (holding that three suicides in a county jail did not constitute sufficient evidence of a widespread custom of failing to prevent suicides).

In light of this heavy burden, *Monell* discovery is routinely more complex, time-consuming, and costly than discovery against individuals. *See, e.g.*, *Elrod v. City of Chicago*, 2007 WL 3241352, at *5 (N.D. Ill. Nov. 1, 2007); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Quite often it involves the production of many files and documents relevant to establishing widespread customs. *See, e.g.*, *Awalt v. Marketti*, 2012 WL 6568242, at *6 (N.D. Ill. Dec. 17, 2012) (ordering the production of voluminous medical files because plaintiff's *Monell* theory required her to "prove more than just one, or two, or even three

instances of inadequate medical care"); *Padilla v. City of Chicago*, 2011 WL 3651273, at *1–4 (N.D. Ill. 2011) (holding that the Magistrate Judge committed clear error by refusing to order the disclosure of five years of City-wide police misconduct reports).

Compared to the normal course of *Monell* discovery in major civil-rights cases, Plaintiff's request for two years of additional homicide files is unusually narrow. Courts have repeatedly rejected the City's burden objections, ordering much larger *Monell* discovery than what Plaintiff seeks here. *E.g.*, *Reyes*, 2019 WL 4278043, at *1 (ordering the production of four years of homicide and CR files); *Prince*, 2020 WL 1874099, at *5 (same); *Bouto*, 2020 WL 4437671, at *4 (five years of homicide and CR files); *Sierra* (Ex. A) at 3 (same);.

### B. The Area 5 CR Files Have Already Been Produced and Are Essential to Plaintiff's *Monell* Claims of Inadequate Training, Supervision, and Discipline

There can be no dispute that Area 5 CR files are centrally relevant to Plaintiff's claim that the City failed to properly train, supervise, and discipline its officers. Indeed, CR files are the City's sole mechanism of documenting complaints against police officers and the City's response to those complaints. These files will show, among other things, the rate of complaints of particular forms of misconduct; the frequency with which the City imposed discipline for particular forms of misconduct; the City's disciplinary response to officers with multiple complaints; and the overall rates of discipline and supervision within the Chicago Police Department. And CR files are the *only* documents that can provide this information.

Because of the central importance of these files, the City has routinely been ordered to produce multiple years of CR files in police-misconduct cases with *Monell* claims. *See Reyes*, 2019 WL 4278043, at *9 (N.D. Ill. Sept. 10, 2019) (collecting cases); Ex. C, Minute Order in *Hood* (requiring the production of CR files for the years 1989 through 1996). This includes the *Reyes* and *Sierra* cases, where the City has fully produced Area 5 CR files for the years

8

1991 through 1998. By simply re-producing or designating the CR files that it has already produced in those two cases, the City can make this critical evidence available in this case at no additional cost.

When the parties conferred, the City was unable to provide a cogent basis for refusing to designate or re-produce these CR files. Ex. E at 2. Instead, the City generally contended that Plaintiff had not "justif[ied] the necessity for the years requested." *Id.* But the City is well aware of the law governing the Plaintiff's burden of proof on *Monell* claims, which has been extensively briefed across countless cases and has formed the basis of numerous court orders to produce CR files. *See, e.g.*, *Reyes*, 2019 WL 4278043, at \*9; *Bouto*, 2020 WL 4437671, at \*1–2, \*4; Ex. A (*Sierra* Order) at 3–4; *Prince*, 2020 WL 1874099, at \*2, \*5. These cases repeatedly explain the necessity of producing CRs to allow plaintiffs to make the requisite showing under *Monell*. Here, a period of seven years, from 1991 through 1997, provides a sufficient sample for expert analysis while avoiding any burden on the City because those files have already been produced.

In short, all Area 5 CR files for the seven years preceding Plaintiff's conviction have been produced pursuant to court orders in other cases; the question is simply whether those files may be used to adjudicate the *Monell* claims in this case. By standing on its unsubstantiated objections, the City is simply refusing to allow Plaintiff to use relevant documents that the City has fully produced and that Plaintiff's counsel already possesses. Though the City has its own strategic motives for obstructing *Monell* discovery, its conclusory objections have no basis in law and should be overruled.

C. **The Requested Area 5 Homicide Files Are Relevant to Multiple *Monell* Theories and Proportional to the Needs of the Case**

The City has objected to producing any homicide files, contending that Plaintiff's request is overbroad and irrelevant. Before responding to these specific objections, it is important to explain the nexus between the Area 5 homicide files and the *Monell* theories in this case.

1. **The homicide files are directly relevant to each of Plaintiff's *Monell* theories**

In general, the City's homicide files represent the only documents that the City possesses documenting Area Five homicide investigations during the relevant period. The files reflect the Chicago Police Department's version of what occurred during homicide investigations. As a result, they are the lynchpin of any theory about the City's widespread customs in homicide cases, and they are essential to assess any *Monell* theory regarding systematic defects in those investigations. If the City were permitted to not disclose these files, it would be almost impossible for Plaintiff to prove *Monell* liability and be tantamount to entering judgment for the City on certain claims.

These files are also relevant to each of Plaintiff's *Monell* theories in particular. First, Plaintiff alleges that the City had an unconstitutional practice of suppressing evidence during homicide investigations. This theory actually encompasses two distinct practices: (1) the suppression of investigative materials in street files, which were not provided to prosecutors and defense attorneys, and (2) the widespread failure to document important investigative information in the homicide files in the first place. As Judge Harjani explained in *Reyes*, the homicide files can be "(1) examined themselves and (2) compared to other files concerning the same investigation and prosecution" to determine whether evidence was suppressed during particular homicide investigations. *Reyes*, 2019 WL 4278043, at *3.

Second, the homicide files are probative of Plaintiff's *Monell* claim based on the fabrication of evidence. The homicide files may contain documents that constitute fabricated evidence. One example (among many others) comes from an Area Five homicide file produced in the *Rivera* case, which contained a fabricated police report stating that a key eyewitness had never identified anyone but the defendant, while another document in the file revealed that in reality this key eyewitness had first identified a different suspect. *See* Complaint in *Johnson v. Guevara*, No. 20 C 4156 (N.D. Ill.), dkt. 1 ¶¶ 5–6.

Third, the homicide files are relevant to Plaintiff's claim that the City had a widespread custom of coercing confessions. As the court noted in *Reyes*, the files "will contain arrest reports indicating when the individual was arrested, and when the individual gave a statement, information about the length of interrogation, the participants in the interrogation, and a copy of the handwritten confessions." *Reyes*, 2019 WL 4278043, at *3; *see also Bouto*, 2020 WL 4437671, at *2 (applying this reasoning from *Reyes*). Furthermore, the files may reveal that the information in a confession is contradicted by other investigative information (indicating that the confession is false), that the signatures written on confessions were forged, and that the information included in written confessions was known only to the police (demonstrating that officers fed the information to the suspect).

Fourth, the homicide files are relevant to Plaintiff's *Monell* theories regarding training and supervision. In *Fields*, for example, the homicide files on their face contained ample evidence that police officers routinely did not follow written City policies governing the maintenance and production of homicide files, among other subjects relevant to this case. Ex. G (Fields's response to post-trial motions) at 16–24.

### 2. The City's refusal to produce any homicide files is unjustified

Despite the myriad ways in which the homicide files could prove the existence or non-existence of City policies or customs central to Plaintiff's *Monell* theories, the City is standing on its objections to the breadth and burdensomeness of the request and the relevance of these files. Neither of these objections has merit.

*a. The homicide files are relevant*

In objecting to the relevance of these documents, the City revives an argument that has been roundly rejected by every court to consider it: that the homicide files are irrelevant because Plaintiff has not identified a particular document that was unlawfully suppressed in his criminal cases. This argument is fundamentally flawed for at least three reasons.

First, the City is attempting to impose a non-existent requirement that Plaintiff must identify certain evidence through individual discovery before pursuing *Monell* discovery. This argument has no basis in the Federal Rules of Civil Procedure or any pertinent case law. *See Costantino v. Atlantic City*, 152 F. Supp. 3d 311, 324 (D.N.J. 2014) ("According to Atlantic City, before plaintiff is entitled to more discovery she must demonstrate a viable *Monell* claim from only the information she has received to date. No matter what standard and evidentiary burden Atlantic City concocts, its proposal adds a procedural hurdle to obtaining relevant discovery that does not exist in the Rules."). Whether Plaintiff ultimately prevails on a particular *Monell* theory has no bearing on whether the City must respond to discovery on a claim that is indisputably part of the case.

Second, the City's objection is essentially an attempt to undo this Court's ruling on the motion to bifurcate the *Monell* claims. By demanding a threshold showing on the individual claims before *Monell* discovery can proceed, the City is seeking "a de facto bifurcation." *See*

*Reyes*, 2019 WL 4278043, at *4. The City lost this argument when the Court denied its bifurcation motion. Individual discovery is still ongoing, and *Monell* discovery should proceed alongside it.

Last but by no means least, there is ample evidence that critical documents were suppressed and withheld in Plaintiff's criminal case. The homicide file in this case contains *no* General Progress Reports (GPRs)—the standard CPD form on which investigating officers were required to record handwritten notes—many of which documented exculpatory information provided to the police during the criminal investigation. The homicide file also omits exculpatory statements given to the police by witnesses Ruth Antonetty, Debbie Daniels, and Maria Castro. There are also numerous fabricated documents in the homicide file, including false typed supplementary reports that failed to document the exculpatory statements by these witnesses and omitted mention of the misconduct used to try to convince them to implicate Plaintiff. And, of course, the homicide file contains the fabricated handwritten statements of Plaintiff and his co-defendants, as well as the police reports purporting to document their confessions. In short, there are countless examples of unconstitutional suppression and fabrication in the Diaz homicide file that led to Plaintiff's wrongful conviction. The requested Area 5 homicide files will establish whether this suppression and fabrication occurred as a matter of widespread practice and custom within the Chicago Police Department.

  b. *Plaintiff's request for seven years of homicide files is appropriately limited and imposes a minimal burden on the City*

Plaintiff's request for homicide files from 1991 through 1997 is neither overbroad nor unduly burdensome. As discussed above, Plaintiff bears a heavy burden to show that the City maintained widespread practices of evidence suppression, fabrication, and coercion. Seven

years of files provides a sufficient basis for expert analysis to determine the prevalence of these practices, while a shorter timeframe risks preventing Plaintiff from developing the evidence necessary to meet his burden of proof. *See, e.g.*, *Rivera* (Ex. B) (ordering the production of seven years of homicide files).

Moreover, this request imposes little to no burden on the City because it has already been ordered to produce all of these files across *Bouto, Sierra*, and *Reyes*. Indeed, in *Sierra*, the City is in the process of producing a complete set of homicide files for the years 1991 through 1995, and it will complete that production within two months. The remaining two years that Plaintiff seeks in this case—1996 and 1997—have also been ordered produced in *Reyes*. Although the City's Rule 72 objections in *Reyes* remain pending, even if it were to prevail on those objections, that would affect just two years of the files Plaintiff is requesting in this case. When faced with this exact circumstance in *Bouto*, Judge Cox noted that "[t]he court in *Sierra* already ordered the production of some of these same homicide files," meaning that "an additional two years . . . will [not] be unduly burdensome to the City." *Bouto*, 2020 WL 4437671, at *3. Moreover, a two-year period of homicide files is fairly small given the typically broad scope of *Monell* discovery; courts that have balanced the burden to the City have consistently found that four or five years of homicide files is a reasonable period. *See Sierra* (Ex. A) at 3; *Reyes*, 2019 WL 4278043, at *8; *Bouto*, 2020 WL 4437671, at *3; *Prince*, 2020 WL 1874099, at *5. And the files from 1996 and 1997 are important to account for the period immediately preceding Plaintiff's prosecution, which is necessary to rebut a potential argument that the evidence of a widespread practices is stale or out-of-date.

Because the Area 5 homicide files from 1991 through 1997 are directly relevant to each of Plaintiff's *Monell* theories, and because making those files available in this case

imposes little or no burden on the City, Plaintiff respectfully requests that the Court order their production.

## Conclusion

Homicide and CR files from Area 5 represent the only documents that will permit the full adjudication of Plaintiff's *Monell* claims. The City's refusal to agree to the production and designation of these files is inexplicable, given that nearly all of them have already been produced and need only be designated for use in this case. Plaintiff therefore respectfully requests that the Court order the following *Monell* discovery:

- the production of Area 5 CR files for the years 1991 through 1997, which have already been produced in *Sierra* and *Reyes*; and
- the production of Area 5 homicide files for the years 1991 through 1997, which have already been ordered produced in *Bouto*, *Sierra*, and *Reyes*.

November 24, 2020                                       Respectfully submitted,

                                                        /s/ John Hazinski
                                                        *One of Plaintiff's Attorneys*

## Certificate of Service

      I, John Hazinski, an attorney, hereby certify that on November 24, 2020, I filed the foregoing Plaintiff's Motion to Compel *Monell* Discovery via the Court's CM/ECF system, thereby serving it on all counsel of record.

                                                     /s/ John Hazinski
                                                     *One of Plaintiff's Attorneys*