IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIEL GOMEZ ) | |
| ) | Case No. 1:18-cv-03335 |
| Plaintiff, ) | |
| ) | Hon. Charles P. Kocoras |
| v. ) | District Judge |
| ) | |
| REYNALDO GUEVARA, et. al., ) | |
| ) | JURY TRIAL DEMANDED |
| Defendants. ) | |

**MOTION TO COMPEL DEFENDANTS TO ANSWER PLAINTIFF'S REQUEST TO ADMIT AND INTERROGATORIES REGARDING IDOC RECORDED CALLS**

**INTRODUCTION**

Over Plaintiff's objection, during discovery in this matter, Defendants obtained audio recordings of over 3,000 of Plaintiff's telephone calls while he was incarcerated in the Illinois Department of Corrections ("IDOC"). Obtaining these phone calls was no doubt a fishing expedition: Defendants have never cited the calls or presented any evidence from them suggesting there was any subject or person on any of the recordings that was relevant to their case. Instead, Defendants obtained this massive trove of highly personal information in the hope that—somewhere in the thousands of hours of calls between Plaintiff and his mother or wife or other family friends, interspersed among conversations about home cooking and family drama—they might catch a fish—some recorded call in which Plaintiff might implicate himself in the crime.

The production of the massive trove of calls immediately imposed an extraordinary burden and expense on Plaintiff. In addition to placing all of the intimate details of Plaintiff's life

and the lives of his family and friends in the hands of Defendants and their lawyers, it put Plaintiff in the position of having to expend an enormous amount of time and money to review thousands of hours of calls. Plaintiff's attorneys' contractors have listened to the majority of them. They are—predictably—utterly irrelevant and painfully personal. Of the thousands of calls, constituting over a thousand hours of recordings, so far Plaintiff's counsel is not aware of a single call in which Plaintiff implicates himself in shooting the victim, Mr. Diaz, nor any other revelation relevant to the case other than Plaintiff's ceaseless effort to prove his innocence and be freed from the horrors of prison.

In order to understand the ways in which Defendants intend to use this massive trove of evidence in the case before expending many thousands more dollars and enduring hundreds more hours of review, Plaintiff issued a set of requests to admit, and accompanying interrogatories, asking Defendants to identify whether they have identified any calls in which Plaintiff admits to shooting the victim, or lying, or doing anything else that might undermine his claims in any way. The purpose of the requests is simple: to narrow the evidentiary disputes, and to address the enormous burden of Defendants' insistence on obtaining thousands of Plaintiff's phone calls. Other than admitting that the parties received thousands of calls, Defendants have refused to answer the Requests to Admit and Interrogatories in their entirety, necessitating this motion.

## PROCEDURAL HISTORY AND THE REQUESTS AT ISSUE

On January 13 and 14, 2021, Defendants produced over 3,000 of Mr. Gomez's calls obtained in response to Defendants' subpoena to IDOC. On January 15, 2021, Plaintiff issued an interrogatory to the City of Chicago asking it to identify which of the 3,000-plus calls it actually intended to rely on to support its claims or defenses; after lodging various objections, the City responded that it would rely on all of them. Ex. A (City's Response to Plaintiff's Second Set of Interrogatories).

2

Given this unhelpful response, and to narrow issues related to the IDOC audio recordings, on February 2, 2022, Plaintiff issued new requests to admit and accompanying interrogatories to the Individual Defendants and the City of Chicago. The new requests were far narrower, and asked Defendants to admit, *inter alia*, that they are not aware of a single IDOC recording in which Plaintiff stated that he shot the victim, or that he pointed a gun at anyone, etc. The Individual Defendants and the City lodged slightly different objections, but the outcome was the same: other than admitting that they received over 3,000 of Plaintiff's recorded phone calls, they refused to answer any of the remaining requests to admit or interrogatories. Below are several representative requests, and objections, lodged by each Individual Defendant, Ex. B (Defendant Mingey's Responses to RTAs):

**4. You are not aware of a single call in which Ariel Gomez states that he pointed a gun into the crowd at Cicero and Diversey.**

**RESPONSE:** Defendant Mingey objects to this request as improper under Fed.R.Civ.P. 36 because it seeks to elicit information and obtain discovery rather than narrow the issues to be resolved at trial. *See, Tamas v. Family Video Movie Club*, 301 F.R.D. 346, 347 (N.D. Ill. 2014); *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987), and because it requires reliance on documentation of facts outside the request itself. *See, Vergara v. City of Waukegan*, 2007 WL 3334501, at *2 (N.D. Ill. Nov. 6, 2007). Defendant Pergande further objects to this request based on the attorney-client and attorney work product privileges, and also because Plaintiff has equal access to the information requested. *See* IDOC-SDT 1-4, for phone calls produced to Plaintiff on Jan. 14, 2021 and IDOC-SDT 5-14, for phone calls produced to Plaintiff on Jan.15, 2021.
   Subject to and without waiving these objections, Defendant Pergande cannot truthfully admit or deny this request without violating the attorney-client privilege and attorney work product privilege because the review of Ariel Gomez's recorded telephone calls, obtained pursuant to subpoena *duces tecum* issued to the Illinois Department of Corrections/INTEL, was done by his attorneys and not Defendant Pergande.

**8. You cannot identify a single call in which Ariel Gomez states that he shot Concepcion Diaz.**

**RESPONSE**: Defendant Mingey objects to this request as improper under Fed.R.Civ.P. 36 because it seeks to elicit information and obtain discovery rather than narrow the issues to be resolved at trial. *See, Tamas v. Family Video Movie Club*, 301 F.R.D. 346, 347 (N.D. Ill. 2014); *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987), and because it requires reliance on documentation of facts outside the request itself. *See,*

3

*Vergara v. City of Waukegan*, 2007 WL 3334501, at *2 (N.D. Ill. Nov. 6, 2007). Defendant Pergande further objects to this request based on the attorney-client and attorney work product privileges, and also because Plaintiff has equal access to the information requested. *See* IDOC-SDT 1-4, for phone calls produced to Plaintiff on Jan. 14, 2021 and IDOC-SDT 5-14, for phone calls produced to Plaintiff on Jan.15, 2021.

Subject to and without waiving these objections, Defendant Pergande cannot truthfully admit or deny this request without violating the attorney-client privilege and attorney work product privilege because the review of Ariel Gomez's recorded telephone calls, obtained pursuant to subpoena *duces tecum* issued to the Illinois Department of Corrections/INTEL, was done by his attorneys and not Defendant Pergande.

A representative example of the City's responses is as follows, Ex. C (City's Responses to RTAs):

> **5. The City of Chicago is not aware of a single call in which Ariel Gomez states that he pointed a gun at anyone at Cicero and Diversey.**
>
> **RESPONSE**: Defendant City objects to this request as it is vague and ambiguous ("aware of"), because it assumes that the City has knowledge of each and every phone call that Ariel Gomez made during the time he was incarcerated, and it is not so simple and direct that it can be readily admitted or denied and phrased so that it cannot be admitted or denied without explanation. Defendant City also objects to this request as it improper under Fed. R. Civ. P. 36 as it seeks to elicit information and obtain discovery rather than narrow the issues for trial. *See, Tamas v. Family Video Movie Club*, 301 F.R.D. 346, 347 (N.D. Ill. 2014); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir.1987). Finally, Defendant City objects this request based on the attorney client and attorney work product privileges, and because Plaintiff has equal access to the information in the calls actually received, since the recordings were produced to Plaintiff in January 2021. See IDOC-SDT 1-4, for phone calls produced to Plaintiff on January 14, 2021 and IDOC-SDT 5-14 for phone calls produced to Plaintiff on January 15, 2021. Subject to and without waiving these objections, the City, after making a reasonable inquiry, is unable to secure knowledge or information sufficient for it to admit or deny this request.

Plaintiff also issued an accompanying interrogatory requesting that if Defendants denied any of the requests to admit, then to identify the calls that supported their denials. Defendants refused to answer that request, Ex. D (Defendant Mingey's Response to Interrogatories), as follows:

> **17. For each response to Requests to Admit Nos. 1-12 in Plaintiff's First Requests to Admit to the Individual Defendants for which you provided anything other than an unequivocal "Admit," please identify each audio recording that supports your denial. Each recording should be identified by disc & call number, and filename.**

4

**Please be advised that the Plaintiff intends to move to bar or strike any references to, or reliance on, any recordings that are not specifically identified in response to this request.**

**ANSWER:** Defendant Mingey objects to this interrogatory on the grounds that Plaintiff's Requests for Admission are vague and ambiguous (Request to Admit Nos. 1-2), improper under Fed.R.Civ.P. 36 (Request to Admit Nos. 1-12), and violate the attorney-client and attorney work product privileges (Request to Admit Nos. 1-12), and hence this interrogatory seeking information based on those Requests for Admission is objectionable for the same reasons. Defendant Mingey incorporates his objections in his Response to Plaintiff's First Set of Requests for Admission to the Individual Police Officer Defendants Nos. 1- 12 as though fully set forth herein.

## MEET AND CONFER PROCESS

Plaintiff received Plaintiff received the Individual Defendants' and City's responses on March 11 and March 14, 2022, respectively. Plaintiff informed all Defendants on March 14, 2022 that he considered the responses deficient. Ex. E (Swaminathan 3/14 Emails). The parties then had a meet and confer, after which it was agreed that the parties were at impasse.

## ARGUMENT

**A. The Individual Defendants' Refusal to Answer the Request Because Their Attorneys Reviewed the Calls, Not Them, Is Baseless**

The Individual Defendants—but not the City—took the position in their written responses that they could not admit or deny the requests because the calls had been received and reviewed by their attorneys, but not themselves personally. *See* Ex. B, Mingey Responses to Requests Nos. 3-12. This position is baseless—attorneys are the agents of their clients, and responses to written discovery must necessarily incorporate the knowledge of counsel. *See, § 2177 Answers to Interrogatories, 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed.); see also, e.g.*, *Petrovic v. City of Chicago*, No. 06 C 6111, 2007 WL 2410336, at *4 (N.D. Ill. Aug. 21, 2007) ("Defendant's counsel was required to make full and honest answers to interrogatories as to the circumstances surrounding the fatal accident which 'would necessarily have included all pertinent information gleaned by [counsel] through his interviews with the witnesses.'"), quoting

5

*Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000) (same); *State of Ill. v. Borg, Inc.*, 95 F.R.D. 7, 8 (N.D. Ill. 1981) (party is obligated to provide information from its lawyer in response to discovery); *Priddy v. Health Care Serv. Corp.*, 2016 WL 6237800, at *4 (C.D. Ill. Oct. 25, 2016) (same); *David Mizer Enterprises, Inc. v. Nexstar Broad., Inc.*, No. 14-CV-2192, 2016 WL 4541825, at *3 (C.D. Ill. Aug. 31, 2016) ("The answering party cannot limit answers to matters within his or her own knowledge and ignore information available to the individual answering the interrogatory or to persons or sources under that individual's control. If an appropriate interrogatory is propounded, the answering party is required to give information available to the answering party, if any, through his attorney, investigators employed by him, or on his behalf or other agents or representative, whether personally known, to the answering party or not."); *Smith v. Howe Military Sch.*, No. 3:96-CV-790RM, 1998 WL 175875, at *2 (N.D. Ind. Feb. 27, 1998).

Indeed, to state the obvious, if parties could refuse to answer written discovery because the information was the knowledge of their attorneys but not themselves, the written discovery process would be largely thwarted. To their credit, the Individual Defendants did not seem to press this argument during the parties' meet and confer, and it is Plaintiff's understanding that the Individual Defendants have abandoned this objection.

### B. Work Product Privilege Does Not Permit Defendants to Refuse to Answer Discrete Requests For Factual Information, Or the Lack Thereof

In the parties' meet and confer, the Defendants made clear that they were relying on the work product privilege to justify their refusal to answer Plaintiff's requests to admit and interrogatories. The work product privilege does not protect the basic factual information sought by the requests at issue.

6

As an initial matter, Defendants bear the burden of establishing that the information requested is subject to the work product privilege. *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015) (collecting cases). "[B]lanket claim[s]" of privilege are "unacceptable." *Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012). And while the Federal Rules of Civil Procedure prohibit discovery of certain documents and things, particularly those prepared by counsel, "the disclosure of facts cannot be precluded simply because the facts were learned by an attorney." *S. Illinois Laborers' and Employers Health and Welfare Fund v. Pfizer*, 2007 WL 4557100, at *2 (N.D. Ill. Dec. 21, 2007); *see also U.S. ex rel. Tyson v. Amerigroup Illinois*, 230 F.R.D. 538, 546 (N.D. Ill. 2005). That is exactly what Plaintiff's requests seek: underlying facts.

Take request to admit numbers 3 and 8, as examples: respectively, they ask Defendants to admit that they are not aware of a single call in which Ariel Gomez states that he shot Concepcion Diaz, and that they cannot identify a single call in which Ariel Gomez states that he shot Concepcion Diaz. Ex. C. These requests do not call for documents prepared by counsel, or attorney opinions, mental impressions or strategy; instead, they call purely for factual information. Either Defendants are aware of calls that contain particular facts, or they are not. Stating so, and identifying the calls to the extent they claim they exist, is clearly not privileged. *See Tyson*, 230 F.R.D. at 547 (citing *Hickman v. Taylor*, 329 U.S. 495, 504, 513, 6 (1947) ("Although documents prepared by petitioner's counsel are protected work product, the facts are not and '[s]earching interrogatories' directed to petitioner's counsel will 'serve to reveal the facts in [his possession] consistent with public policy.'")); *Roa v. Tetrick*, No. 1:13-CV-379, 2014 WL 695961, at *5 (S.D. Ohio Feb. 24, 2014) (work product privilege "does not protect the disclosure of underlying facts, regardless of who obtained those facts." (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981))).

Defendants counter that the information sought is privileged because it would permit Plaintiff to learn what evidence Defendants have gathered (or not gathered), and that the information is equally available to Plaintiff, since he also has the calls. But again, Plaintiff's requests seek only the disclosure of facts, and thus work product privilege does not apply. Moreover, Defendants' reasoning is plainly wrong because, by Defendants' logic, contention interrogatories would always be improper. After all, to answer a contention interrogatory, a party necessarily reveals what evidence they have gathered to support a particular fact or claim at issue, even though all the evidence in the case has necessarily been disclosed to both parties during discovery. But of course contention interrogatories are not just permitted but routine, and have been repeatedly held not to invade attorney work product. *See Est. of Swayzer v. Clarke*, No. 16-CV-1703, 2019 WL 1980349, at *4 (E.D. Wis. May 3, 2019) *Terry v. Cty. of Milwaukee*, No. 17-CV-1112-JPS, 2018 WL 1411234, at *3 (E.D. Wis. Mar. 21, 2018) ("[I]t is well-settled that contention interrogatories are entirely appropriate even though they ask for opinions as to the interaction of law and fact."); *Tyson*, 230 F.R.D. at 546–47 (N.D. Ill. 2005) ("Many court have rejected this kind of overly-facile [work product] objection to contention interrogatories that seek the factual basis for positions."); *Rusty Jones, Inc. v. Beatrice Co.,* 1990 WL 139145 (N.D. Ill.1990) (collecting cases); *Norwood v. Radtke*, No. 07-CV-624-BBC, 2008 WL 3852083, at *2 (W.D. Wis. Feb. 26, 2008).

Not only are contention interrogatories permitted, these very Defendants have employed them extensively in this case. By way of example, Defendant Mingey's interrogatories include the following, Ex. F (Plaintiff's Response to Mingey's Interrogatories):

> 2. Do you contend Defendants Pergande, Ruiz, Mingey or Biebel withheld exculpatory evidence from Plaintiff prior to his criminal trial? If yes:
> a. please identify by Bates Stamp number each piece of exculpatory evidence that was withheld from Plaintiff,

8

>    b. which Defendant withheld which piece of exculpatory evidence, or
>    c. identify by Bates Stamp number every piece of exculpatory evidence that was withheld but you lack knowledge or information to verify who withheld such evidence.

The City has not yet issued interrogatories in this case, but in the other Guevara cases its same counsel has employed contention interrogatories that are vast in scope. They include the following, Ex. G (Plaintiffs' Response to City's Interrogatories in *Reyes/Solache*):

> 2. For each theory of liability pursuant to *Monell* identified in answer to Interrogatory Number 1, please state the factual basis and evidence upon which Plaintiffs will rely to establish how such theory amounts to a "policy" pursuant to *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978).
>
> 3. For each alleged policy identified in answer to Interrogatory No. 2, identify all evidence known to Plaintiffs that establishes why each alleged policy is unconstitutional.
>
> 4. For each policy identified in answer to Interrogatory No. 2, identify all evidence known to Plaintiffs that establishes that Defendant City of Chicago had notice that the alleged policy was in effect, including all evidence that establishes that the City had notice that the alleged policy caused or would cause the violation of any individual's constitutional rights before or during the time of investigation of the murders of Jacinta and Mariano Soto and the kidnapping of their children, Santiago and Maria.
>
> 5. For each alleged policy identified in answer to Interrogatory No. 2, identify all evidence known to Plaintiffs that establishes that Defendant City of Chicago was deliberately indifferent to violations of constitutional rights caused by the alleged policy.

In other words, the City felt it was appropriate to insist that Plaintiff identify every item of evidence that supports every theory of *Monell* liability, and identify every item of evidence that supports every element of every theory.[1] By contrast, Plaintiff's requests to admit ask Defendants to simply state yes or no (as opposed to a narrative) about whether any of the IDOC phone calls (as opposed to "all evidence" disclosed in the case) contain particular admissions. Plaintiff's interrogatories, likewise, merely ask Defendants to identify the phone calls that support any denials, or which it intends to rely on in this case

---

[1] Plaintiffs in *Reyes/Solache* served a 32-page response to the City's contention interrogatories, which the City deemed *insufficiently detailed* and was the subject of supplemental conferrals and additional supplementation.

(as opposed to asking how or why the calls support particular legal theories or elements of those theories). Put simply, Plaintiff's requests to admit and interrogatories are far narrower than the contention interrogatories the Defendants have issued and that Plaintiff has answered. Plaintiff's requests to admit call for purely factual information—whether or not particular facts are memorialized in a subset of the evidence in the case (*i.e.*, IDOC recordings). This is not privileged, and courts have directed responses to such requests to admit. *See Itex, Inc. v. Workrite Unif. Co. Inc.*, No. 08 C 1224, 2011 WL 1224920, at *2 (N.D. Ill. Mar. 31, 2011) (rejecting work product objection and compelling response to request to admit that asked whether or not a particular thing occurred); *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, No. 12 C 1446, 2013 WL 2466921, at *6 (N.D. Ill. June 7, 2013) ("[A]nswering "admit" or "deny" does not raise an inference that reveals information which violates the privilege").

Plaintiff's interrogatories are merely extensions of the requests to admit, *i.e.*, to the extent that there are prison recordings that Defendants assert contain factual information relevant to Plaintiff's claims, to identify them. Interrogatories like these, too, are typical, and courts have routinely directed responses to them. *See, e.g.*, *Davis v. City of Springfield, Ill.,* Nos. 04–3168, 07–3096, 2009 WL 268893, at *7 (C.D. Ill. Jan.30, 2009) (compelling defendant to respond to an interrogatory requesting defendants to identify "any document that memorializes any fact or otherwise supports its assertion of the affirmative defenses"); *Fanslow v. Chicago Mfg. Ctr., Inc.*, No. 01 C 3558, 2005 WL 8178825, at *2 (N.D. Ill. May 23, 2005) (compelling party to "identify and describe all persons, documents, and communications upon which [it] based its responses to each Request to Admit").

For the reasons above, Defendants should all be ordered to response to the requests to admit and interrogatories at issue.

C. **Even If the Court Concludes That the Work Product Privilege is Implicated, Plaintiff Has Shown a Substantial Need For a Response to the Requests**

Even if the Court were to rule that Plaintiff's requests infringe upon work product to some extent, the privilege is not absolute. Here, Plaintiff has demonstrated a "substantial need" and an "[i]nability to obtain the substantive equivalent of the information without undue hardship." Fed. R. Civ. P. 26(b)(3)(ii); *Caremark, Inc. v. Affiliated Computer Servs, Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000).

Plaintiff has a substantial need for responses to the requests at issue. Defendants chose to undertake this fishing expedition, and the immense burden that accompanies it. Put simply, after collecting all of these calls, have Defendants actually found anything in the thousands of calls that actually supports their position on the critical contested issues on liability, *i.e.*, whether Plaintiff shot at Concepcion Diaz, whether he had a second gun (because the gun he had did not match the bullets found in the victim), etc.? Plaintiff has a substantial need to know the answer to these questions, and if the answer is no, then that substantially narrows the issue at trial.

Other than asking Defendants to provide this basic factual information, the only way for Plaintiff to discover this information is to finish reviewing the more than 3,000 calls. This would cause undue hardship in the extreme. Each of the more than 3,000 calls is almost 30 minutes long, amounting to approximately 1,500 hours of calls to be reviewed. This would completely occupy a full-time associate for almost a year. The contract attorney cost to review all the calls is over $50,000. Plaintiff has already reviewed the majority of calls, which contain discussion that is not remotely relevant, and indeed Plaintiff has yet to hear a single call that bears on the central issues in this case. And, more precisely at issue, the only way for Plaintiff to obtain the

information sought by his requests is to finish listening to every minute of every call. Given the circumstances, that would be unreasonable and cause undue hardship.

Ultimately, if Defendants are going to pursue a massive and burdensome fishing expedition, they should be required to state whether they actually caught any fish.

## CONCLUSION

For all of the reasons set forth above, Plaintiff's motion to compel the Defendants to respond to the requests to admit and interrogatories at issue should be granted.

Dated: April 27, 2022

Respectfully submitted,

/s/ Anand Swaminathan
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steve Art
Rachel Brady
Sean Starr
Isabella Aguilar
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

## **CERTIFICATE OF SERVICE**

    I, Anand Swaminathan, an attorney, hereby certify that on April 27, 2022, I filed the foregoing Motion to Compel via CM/ECF, thereby delivering it to all counsel of record.

/s/ Anand Swaminathan
*Attorney for Plaintiff*
